KELIIKANAKAOLE (w) *v.* W. G. WALKER and HAKA-
LAU PLANTATION CO.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED JULY 7, 1897.      DECIDED SEPTEMBER 21, 1897.

FREAR AND WHITING, JJ., AND CIRCUIT JUDGE PERRY, IN
PLACE OF JUDD, C.J., ABSENT.

Decree dismissing a bill for the cancelation of a deed on the ground
that its execution was procured by fraud, affirmed on the evidence.

OPINION OF THE COURT BY FREAR, J.

This is a suit in equity for the cancelation of a deed on the
ground that its execution was procured by fraud. The Circuit
Judge dismissed the bill on defendant's motion at the close of
the complainant's evidence on the ground that she had not made
out her case and she now comes here on appeal contending that
her evidence was sufficient to sustain the bill.

The complainant claims to have been the owner of the Ahu-
puaa of Nanue, Hilo, Hawaii, containing about 480 acres. On
December 21, 1883, she executed a lease of all but 25 acres of
the Ahupuaa to the defendant Walker at an annual rental of
$200, the lessee also to erect for the lessor a house of the value
of $500. She afterwards executed a deed, dated June 6, 1887,
of this land to Walker for a consideration of $2,000; also a lease,
dated June 7, 1887, of 15 of the remaining 25 acres to Walker
at an annual rental of $200. On October 20, 1888, Walker
leased the tract covered by the deed to the Hakalau Plantation

Co., at an annual rental of $900. The complainant admits that she executed the deed but claims that her signature thereto was obtained by fraud, she supposing at the time that she was signing a duplicate of the lease of the 15 acre tract.

After a careful examination of the evidence we are of the opinion that it is insufficient to support the bill. No doubt the evidence is not such as to reflect any credit upon Mr. Walker in his dealings and relations with the plaintiff, and yet at the same time it is not of the clear and satisfactory nature required for the cancelation of a deed. It is true, the consideration named in the deed was small considering the value of the land and it does not appear that it has all been paid. The rentals under the leases also appear not to have been all paid. The explanation appears to be found in the relations sustained between Walker and the plaintiff during the period of his transactions with her. He appears to have paid her small sums of money from time to time but no strict account was kept between them. They dealt with each other in part upon a basis outside of what appeared in the written documents. Inadequacy of consideration or failure to pay part of it has not the weight in this case that it might have under some other circumstances in support of the theory of fraud—not only on account of the relations referred to existing between the parties but also because in this case the theory is that the plaintiff did not knowingly execute a deed at all. This is the main question in the case—whether she executed the deed knowing it to be a deed.

Aside from the direct evidence on the question of the complainant's knowledge of the character of the instrument she executed, the principal evidence relied on is that in regard to the letter and conduct of Walker when written to by complainant's counsel in regard to this matter just before the commencement of this suit. Walker wrote to complainant's counsel that he had conclusive and overwhelming proof that the plaintiff knew of the deed and that he had dealt fairly by her, and then he sent a messenger to the complainant herself promising to pay her money or support her if she would sign an acknowledgment

that she had been paid in full for the land. This also may be explained by reference to the relations that had existed between the parties. One in Walker's position would naturally endeavor to avoid publicity. Moreover, his offer might be explained on the theory that the deed had been signed knowingly but that little of the consideration had been paid as well as on the theory that the signature had been procured by fraud in the first instance. While this conduct may reflect unfavorably upon Walker's past relations or dealings with the complainant, it is not sufficient either in itself or in connection with the other evidence in the case to sustain the bill.

The testimony of the complainant herself is relied on chiefly. Of this the Circuit Judge in his opinion says: "In my experience of a little over six years as an officer of this Court, I never knew of such a bad case of false testimony." Her counsel admit that there are contradictions in her testimony but contend that they are explained by the fact that she is a leper well advanced in the disease and that she has for some time been of unsound mind, running at times into the bush, tearing off her clothes and remaining there for several days, and at other times talking to imaginary persons. Whether the contradictions are the result of a false nature or an unsound mind, the fact remains that the testimony is not reliable to such an extent as to warrant the cancelation of a deed, even when taken in connection with the other evidence in the case. It will serve no useful purpose to review her testimony at length. A portion of it will show its unsatisfactory character. She stated under oath in her bill that she first received information of the deed within six months last past. She testified on direct examination that the two copies of the lease were signed by both parties one evening downstairs in a certain house, with no witnesses; that then they went upstairs at her request in order that witnesses might sign her copy; that both there signed one document which the two witnesses also signed; that she then took the paper and kept it; that this was the deed in question; that Walker left at 4 o'clock the next morning. On cross-examination she testified that she thought

the paper signed upstairs was a third copy of the lease or her own copy; that she signed by mistake without stopping to see whether she had signed already, and that she kept the copy that was signed upstairs for several years when she gave it to her lawyer; also that shortly after this many persons told her she was foolish to sell the land and she told them she did not sell it and asked one of the witnesses to the deed who told her that she had sold it; also that the native lawyer who drafted the papers brought her a paper the morning after the signing and told her it was her lease; that this made two papers in her possession; that the lawyer then asked her for the deed and that she told him he had been doing a rascally trick and then gave him the deed and he gave it to Walker who then went away; that then she knew she had given a deed. Both copies of the lease, dated June 7, 1887, was signed by both parties and witnessed by one G. Kittel. The deed, dated June 6, 1887, was signed by the complainant only and witnessed by G. Kittel and one Samuel Taylor. Taylor testified that the deed was signed downstairs in the evening; that it was read to the complainant by the lawyer; that she appeared to be perfectly satisfied; that no paper was signed upstairs that night so far as he knew; that he left shortly after the deed was executed.

The decree appealed from is affirmed with costs.

*H. E. Cooper* and *Magoon & Edings* for complainant.

*W. R. Castle* and *Kinney & Ballou* for defendants.